NOT DESIGNATED FOR PUBLICATION

No. 120,717

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ABRAM A. SCOTT,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Harvey District Court; JOE DICKINSON, judge. Opinion filed May 8, 2020. Affirmed.

*B. Keith Edwards*, of Joseph, Hollander & Craft, L.L.C., of Wichita, for appellant.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.


Before STANDRIDGE, P.J., ATCHESON, J. and BURGESS, S.J.

PER CURIAM: Abram A. Scott appeals the administrative suspension of his driver's license, contending that the notice he received before submitting to an evidentiary breath test did not contain all of the advisories set out in the Kansas implied consent law. Scott is factually correct; because of a Kansas Supreme Court ruling invaliding two of the statutory advisories, those two advisories were removed from the written and oral notices given by law enforcement officers to all drivers before administering evidentiary breath tests. But because the notices that were provided to Scott substantially complied with the law's notice requirements, we uphold the license suspension.

1

On March 18, 2018, Kansas Highway Patrol Trooper Scott Walker responded to the scene of a motor vehicle accident involving Scott. Scott admitted to consuming alcoholic beverages, smelled of alcohol, had bloodshot eyes, had slurred speech, had difficulty in communicating, and had poor balance and coordination. Scott failed field sobriety tests and a preliminary breath test. Based on these facts, Trooper Walker concluded there were reasonable grounds to believe Scott was operating a vehicle under the influence of alcohol and arrested him for this violation.

Before requesting Scott to submit to an evidentiary breath test, Trooper Walker provided Scott with oral and written notice of the advisories contained in a DC-70 implied consent form, which sets forth the consequences of a test refusal or failure depending on the particular facts presented and the driver's history of driving under the influence. The oral and written advisory notices used by Trooper Walker were provided to Scott on a DC-70 form that had been revised by the Kansas Attorney General on February 26, 2016. The revised DC-70 form provided to Scott omitted two of the statutory advisory notices: that a driver lacks the constitutional right to refuse testing and that the driver faces potential criminal consequences for refusing a test. The revisions to the DC-70 form were published by the Kansas Attorney General in response to the Kansas Supreme Court's decisions deeming these two provisions of the statute unconstitutional. See *State v. Ryce*, 303 Kan. 899, 944, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017); *State v. Nece*, 303 Kan. 888, 896, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017).

After providing the oral and written advisory notices, Trooper Walker requested Scott to submit to an evidentiary breath test. Scott consented. The test showed Scott's blood alcohol concentration (BAC) at 0.209, which exceeded the legal limit (0.08) in Kansas. See K.S.A. 2017 Supp. 8-1002(a)(2). The elevated level of Scott's BAC

statutorily required that his driver's license be suspended for one year after the opportunity for an administrative hearing. See K.S.A. 2017 Supp. 8-1001(c)(3). Scott was personally served with a Notice of Driver's License Suspension on March 18, 2018, the day he was arrested. He submitted a timely response and requested an in-person hearing, which was held on May 7, 2018. The hearing officer affirmed the Kansas Department of Revenue's administrative action to suspend and restrict Scott's driving privileges.

Scott appealed, and the district court held a de novo bench trial on January 2, 2019. Scott presented no evidence at trial. Instead, he claimed the revised DC-70 form did not include required statutory language advising him (1) that there is no constitutional right to consent or refuse to submit to a test and (2) that refusing to submit to a test is a separate and distinct crime. Because the revised DC-70 form did not include these advisories, Scott claimed the suspension of his driving privileges was invalid. The district court affirmed Scott's suspension, finding that the notices provided by Trooper Walker fulfilled the purpose of K.S.A. 2017 Supp. 8-1001(k) and substantially complied with its provisions. Scott appeals from the district court's decision.

ANALYSIS

Scott's sole argument on appeal is that the district court erred when it found that the notices Trooper Walker provided from the revised DC-70 form were not fatally flawed because they omitted two provisions of K.S.A. 2017 Supp. 8-1001(k). Generally, when reviewing a district court's order in an administrative driver's license suspension case, appellate courts "are tasked with ascertaining whether substantial competent evidence in the record supported the district court's factual findings and whether the conclusion derived from those findings is legally correct." *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). But where, as here, an issue involves statutory and constitutional interpretation, it is a question of law and subject to unlimited appellate review. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176

3

P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015).

K.S.A. 2017 Supp. 8-1001(k) was the statute in effect at the time of Scott's arrest on March 18, 2018. That statute was amended during the 2018 legislative session, but those amendments did not go into effect until July 1, 2018. Therefore, the 2017 statute is applicable to the facts presented here. We begin our analysis with subsection (k) of the statute, which sets out nine notices to be given, both orally and in writing, to a driver asked to take an evidentiary test of his or her blood, breath, urine, or other bodily substances to determine the presence of alcohol or drugs. On February 26, 2016, our Supreme Court held the following two of these statutory notices were constitutionally invalid: K.S.A. 2014 Supp. 8-1001(k)(2), which provided that the "the opportunity to consent to or refuse a test is not a constitutional right" and K.S.A. 2014 Supp. 8-1001(k)(4), which provided:

> "[I]f the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence, if such person has:
>
> "(A) Any prior test refusal as defined in K.S.A. 8-1013, and amendments thereto, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older; or
>
> "(B) any prior conviction for a violation of K.S.A. 8-1567 or 8-2,144, and amendments thereto, or a violation of an ordinance of any city or resolution of any county which prohibits the acts that such section prohibits, or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging any such violations, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older."

See *Ryce I*, 303 Kan. at 907-08, 944; *Nece I*, 303 Kan. at 892, 895-96.

4

The *Ryce I* court found that "when an officer requests a search based solely on having deemed that the driver had impliedly consented to the search, the driver has a right grounded in the Fourth Amendment to refuse to submit." 303 Kan. at 944. This means that the notice in K.S.A. 2017 Supp. 8-1001(k)(2) advising a driver that "the opportunity to consent to or refuse a test is not a constitutional right" is legally incorrect. The *Ryce I* court also found K.S.A. 2014 Supp. 8-1025 was facially unconstitutional because it made the refusal to take a test—a test impliedly consented to under the statute—a crime. 303 Kan. at 963-64. So the warning in K.S.A. 2017 Supp. 8-1001(k)(4) about the possibility of separate criminal charges for refusing to submit to a test is also constitutionally invalid.

Despite the invalidity of these two subsections of the notice law, Scott argues that the law commands that both advisories must be given. We are not persuaded by Scott's argument. When courts interpret statutes, we seek to avoid absurd results. We see no good reason to require a police officer to give a statutory notice that is no longer valid. And there is no statutory requirement that the precise wording of the notices in K.S.A. 2017 Supp. 8-1001(k) be given before the administration of a test under the statute. Substantial compliance with the notice provisions of K.S.A. 2017 Supp. 8-1001(k) is sufficient. By substantial compliance, we mean that the notices provide information to the driver that informs the driver of the essential components of the statute. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 472, 447 P.3d 959 (2019) (citing *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 [1988]). The essentials (i.e., the purpose) of the implied consent advisories is to inform the driver of the law regarding his or her submission to an evidentiary test and the possible consequences of a test failure or refusal. See K.S.A. 2017 Supp. 8-1001(k). That purpose is subverted if the arresting officer is required to provide notice of provisions that have already been found to be unconstitutional and unenforceable. See *Ryce I*, 303 Kan. at 944, 963-64.

5

Scott's argument is further undermined by K.S.A. 2017 Supp. 8-1007, which provides:

> "This act shall be construed as supplemental to existing legislation; and if any clause, paragraph, subsection or section of this act shall be held invalid or unconstitutional, it shall be conclusively presumed that the legislature would have enacted the remainder of this act without such invalid or unconstitutional clause, paragraph, subsection or section."

Scott attempts to get around this severability clause by arguing that it only applies until the end of the legislative session during which a statutory provision is declared unconstitutional, in this case the 2016 legislative session. See *Ryce I*, 303 Kan. at 944, 963-64. Scott claims the severability clause allows only a limited "grace period" for the Legislature to bring the statute in line with the Kansas Supreme Court's decision. Scott asserts the Legislature's failure to do so is evidence that it does not intend to comply with the Kansas Supreme Court's holding. But this argument reads language into the statute that does not exist. There is no language in K.S.A. 2017 Supp. 8-1007 that states its provisions apply only for a limited period of time to allow the Legislature a chance to amend the statute. Instead, the severability clause works to excise any offending statutory language regardless of when, or even if, the Legislature gets around to doing it.

Turning to the facts here, Scott heard and read the revised DC-70 form that contained all of the required K.S.A. 2017 Supp. 8-1001(k) notices except subsections (2) and (4). Because those subsections had been nullified by *Ryce I*, they are no longer essential components of the statute. The language within the revised DC-70 substantially complied with the notices that were required post-*Ryce I*. See *Creecy*, 310 Kan. at 472-73. Because the notice that Scott received informed him of the essential components of the statute, the suspension of his driving privileges is proper.

In sum, we note that the issue and the argument presented here are not new to this court and not original to Scott. The same argument has been made to other panels of this court, and those panels consistently have come to the same conclusion that we do today: "[A]n implied consent advisory based on the revised DC 70—with its omission of certain statutory warnings invalidated by [*Ryce I*]—constituted substantial compliance with K.S.A. 2017 Supp. 8-1001(k)." *Leivian v. Kansas Dept. of Revenue*, No. 119,249, 2019 WL 166541, at *4 (Kan. App. 2019) (unpublished opinion); see also, e.g., *Ackerman v. Kansas Dept. of Revenue*, No. 118,128, 2018 WL 3673168, at *2-4 (Kan. App. 2018) (unpublished opinion), *rev. denied* 310 Kan. __ (December 27, 2019); *Bynum v. Kansas Dept. of Revenue*, No. 117,874, 2018 WL 2451808, at *3-4 (Kan. App. 2018) (unpublished opinion); *State v. Barta*, No. 117,990, 2018 WL 1883878, at *5 (Kan. App. 2018) (unpublished opinion); *White v. Kansas Dept. of Revenue*, No. 117,956, 2018 WL 1769396, at *5-6 (Kan. App. 2018) (unpublished opinion).

Affirmed.